1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE, WASHINGTON

9
10

| | |
|---|---|
| RICHARD WEINSTEIN, derivatively on behalf of ONCOTHYREON INC., | Case No.: |
| Plaintiffs, | |
| v. | COMPLAINT |
| ROBERT L. KIRKMAN, JULIE M. EASTLAND, CHRISTOPHER S. HENNEY, RICHARD L. JACKSON, DANIEL K. SPIEGELMAN, W. VICKERY STOUGHTON and DOUGLAS E. WILLIAMS, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| ONCOTHYREON INC., | |
| Nominal Defendant. | |

11
12
13
14
15
16
17
18
19
20
21

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

22
23

1.     Plaintiff Richard Weinstein ("Plaintiff"), by and through his undersigned

24

attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for

25

the benefit of nominal defendant Oncothyreon Inc. ("Oncothyreon" or the "Company") against

26

COMPLAINT - 1

**BADGLEY MULLINS TURNER PLLC**
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

certain current and/or former members of its Board of Directors (the "Board") and executive officers, seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment from 2010 to the present (the "Relevant Period").

**NATURE OF THE ACTION**

2.      According to its public filings, Oncothyreon is a biotechnology company specializing in the development of innovative therapeutic products for the treatment of cancer. Oncothyreon's goal is to develop and commercialize novel synthetic vaccines and targeted small molecules that have the potential to improve the lives and outcomes of cancer patients.

3.      The Company currently has no products on the market.  As such, the success of the clinical trials of the Company's experimental drugs is of the utmost importance to the Company's ability to generate revenue in the future.

4.      According to defendants, the most advanced drug in the Company's pipeline is L-BLP25 (also known as Stimuvax), which is described as an innovative cancer vaccine designed to induce an immune response to cancer cells that express MUC-1, a protein antigen widely expressed on common cancers.  MUC-1 is over expressed on many cancers such as lung cancer, breast cancer, prostate cancer and colorectal cancer. L-BLP25 is thought to work by stimulating the body's immune system to identify and destroy cancer cells expressing MUC-1.

5.      L-BLP25 is considered an "experimental lung cancer treatment," and has been the subject of clinical trials involving patients with an advanced form of non-small cell lung cancer. The study in question involved more than 1,500 patients in 33 countries.  Defendants caused Oncothyreon to license L-BLP25 to Merck KGaA ("Merck"), which conducted the study.  As such, L-BLP25 is being developed by Merck under a license agreement with Oncothyreon.

6.      Prior to and throughout the Relevant Period, defendants failed to disclose that the

COMPLAINT - 2

**BADGLEY MULLINS TURNER PLLC**

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

clinical trial of L-BLP25 was not proceeding according to plan.   Defendants utterly failed to disclose that L-BLP25 was missing its main goal of improving overall survival of lung cancer. Further, during this concealment, defendants caused the Company to conduct two massive public equity offerings, all under the guise that the Company's clinical trials were on the right track and would produce drugs which could be marketed in the near future.

7.   On December 19, 2012, defendants finally disclosed that L-BLP25 had missed its main goal of improving overall survival. Defendants declined to offer any more substantive details about the clinical trial failure.

8.   Following this disclosure, shares of the Company's stock fell $2.31 per share, or over 50% to close on December 19, 2012 at $2.19 per share.

9.   Plaintiff alleges that, throughout the Relevant Period, defendants failed to disclose material adverse facts about the Company's financial well-being, business operations, and prospects.   Specifically, defendants failed to disclose or indicate the following: (1) that the clinical trial of L-BLP25 was not proceeding according to plan; (2) that as a result, it was unlikely that L-BLP25 would be able to be marketed at any point in the foreseeable future; (3) that defendants had failed to make adjustments on the diluted earnings and loss per share in connection with warrants issued in May 2009 and September 2010; (4) that the Company lacked adequate internal controls; (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; and (6) that defendants lacked any reasonable basis for their positive statements about the Company and its prospects.

10.   Based on these events, the price of the Company's stock still has not fully recovered.

11.   As a result of defendants' breaches of fiduciary duty and other misconduct, the

COMPLAINT - 3

**BADGLEY MULLINS TURNER PLLC**
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1   Company has been damaged.

2                   **JURISDICTION AND VENUE**

3          12.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in

4   that Plaintiffs and defendants are citizens of different states and/or countries and the matter in

5   controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental

6   jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action

7   is not a collusive one to confer jurisdiction on a court of the United States which it would not

8   otherwise have.

9          13.    Venue is proper in this district because a substantial portion of the transactions

10  and wrongs complained of herein, including defendants' primary participation in the wrongful

11  acts detailed herein, occurred in this district.  One or more of the defendants either resides in or

12  maintains executive offices in this district, and defendants have received substantial

13  compensation in this district by engaging in numerous activities and conducting business here,

14  which had an effect in this district.    Additionally, nominal defendant Oncothyreon is

15  headquartered in this district.

16                       **THE PARTIES**

17         14.    Plaintiff is a current shareholder of Oncothyreon and has continuously held

18  Oncothyreon stock since February 2007.  Plaintiff is a resident of New York.

19         15.    Nominal defendant Oncothyreon is a Delaware corporation with its headquarters

20  located at 2601 Fourth Avenue, Suite 500, Seattle, Washington.  According to its public filings,

21  Oncothyreon is a biotechnology company specializing in the development of innovative

22  therapeutic products for the treatment of cancer.  Oncothyreon's goal is to develop and

23  commercialize novel synthetic vaccines and targeted small molecules that have the potential to

COMPLAINT - 4                        **BADGLEY MULLINS TURNER PLLC**

improve the lives and outcomes of cancer patients.

16. Defendant Robert L. Kirkman ("Kirkman") has served as the Company's President, Chief Executive Officer ("CEO") and a director since September 2006. Upon information and belief, defendant Kirkman is a citizen of Washington.

17. Defendant Julie M. Eastland ("Eastland") has served as the Company's Chief Financial Officer ("CFO") and Vice President, Corporate Development since August 2010. Upon information and belief, defendant Eastland is a citizen of Washington.

18. Defendant Christopher S. Henney ("Henney") has served Chairman of the Board since September 2006 and as a director of the Company since March 2005. Upon information and belief, defendant Henney is a citizen of Washington.

19. Defendant Richard L. Jackson ("Jackson") has served as a director of the Company since May 2003. Upon information and belief, defendant Jackson is a citizen of Ohio.

20. Defendant Daniel K. Spiegelman ("Spiegelman") has served as a director of the Company since June 2008. In addition, defendant Spiegelman served as a member of the Board's Audit Committee (the "Audit Committee") during the Relevant Period. Upon information and belief, defendant Spiegelman is a citizen of California.

21. Defendant W. Vickery Stoughton ("Stoughton") has served as a director of the Company since June 1997. In addition, defendant Stoughton served as a member of the Audit Committee during the Relevant Period. Upon information and belief, defendant Stoughton is a citizen of California.

22. Defendant Douglas E. Williams ("Williams") has served as a director of the Company since October 2009. In addition, defendant Williams served as a member of the Audit Committee during the Relevant Period. Upon information and belief, defendant Williams is a

COMPLAINT - 5

**BADGLEY MULLINS TURNER PLLC**

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

citizen of Massachusetts.

23.     Collectively, defendants Kirkman, Eastland, Henney, Jackson, Spiegelman, Stoughton and Williams shall be referred to herein as "Defendants."

24.     Collectively, defendants Spiegelman, Stoughton and Williams shall be referred to herein as the "Audit Committee Defendants."

## DEFENDANTS' DUTIES

25.     By reason of their positions as officers, directors, and/or fiduciaries of Oncothyreon and because of their ability to control the business and corporate affairs of Oncothyreon, Defendants owed Oncothyreon and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Oncothyreon in a fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of Oncothyreon and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Oncothyreon and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

26.     Defendants, because of their positions of control and authority as directors and/or officers of Oncothyreon, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Oncothyreon, each of the Defendants had knowledge of material non-public information regarding the Company.

27.     To discharge their duties, the officers and directors of Oncothyreon were required to exercise reasonable and prudent supervision over the management, policies, practices and

COMPLAINT - 6

**BADGLEY MULLINS TURNER PLLC**

controls of the Company.  By virtue of such duties, the officers and directors of Oncothyreon were required to, among other things:

    a.  Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b.  Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

    c.  When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

28.    Pursuant to the Audit Committee's Charter, the members of the Audit Committee are required, *inter alia*, to:

    a.  Review and discuss with management the Company's annual and quarterly financial statements;

    b.  Review earnings press releases in advance, including all quarterly earnings releases;

    c.  Discuss or review financial information and earnings guidance provided to analysts and rating agencies;

    d.  Review any reports by management regarding the effectiveness of, or any deficiencies in, the design or operation of disclosure controls and procedures or internal controls; and

    e.  Discuss policies with respect to risk assessment and risk management, including the Company's major financial risk exposures and the steps management has taken to monitor and control such exposures.

## SUBSTANTIVE ALLEGATIONS

### Defendants' False and Misleading Statements During the Relevant Period

29.    According to its public filings, Oncothyreon is a biotechnology company specializing in the development of innovative therapeutic products for the treatment of cancer.

COMPLAINT - 7

**BADGLEY MULLINS TURNER PLLC**
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

Oncothyreon's goal is to develop and commercialize novel synthetic vaccines and targeted small molecules that have the potential to improve the lives and outcomes of cancer patients.

30.     On March 10, 2011, Defendants issued a press release announcing the Company's financial results for 2010.  The press release set forth, in relevant part:

Oncothyreon Inc. (NASDAQ: ONTY) (the "Company") today reported financial results for the year and quarter ending December 31, 2010.

Net loss for the year ended December 31, 2010 was $15.6 million, or $0.58 per basic and diluted share, compared with net loss of $17.2 million, or $0.76 per basic and diluted share for the year ended December 31, 2009.  The decrease in net loss was the result of $3.0 million non-cash income from the change in fair value of warrant liability for the year ended December 31, 2010 versus a $6.2 million non-cash expense for the year ended December 31, 2009, partially offset by an increase in operating expenses to $19.5 million in 2010 from $12.9 million in 2009 and a decrease in revenue to $18,000 for the year ended December 31, 2010 from $2.1 million for the year ended December 31, 2009.

The decrease in revenue in 2010 compared to 2009 is primarily attributable to the absence of contract manufacturing or licensing revenue in 2010, compared with $2.1 million in 2009.  Licensing revenue in 2009 included a $2.0 million milestone payment from Merck KGaA in the fourth quarter related to the license for Stimuvax®.

The increase in operating expenses to $19.5 million in 2010 from $12.9 million in 2009 is due to a $5.2 million increase in research and development expenses and a $1.2 million increase in general and administrative expenses.  Research and development expenses increased due to the more advanced clinical development of PX-866 and preclinical activities associated with ONT-10.  General and administrative expenses increased to $7.8 million in 2010 from $6.6 million in 2009, primarily as the result of legal, accounting and consulting expenses related to regulatory compliance in the first half of 2010.

Net loss for the quarter ended December 31, 2010 was $6.2 million, or $0.20 per basic and diluted share, compared with net loss of $2.5 million or $0.10 per basic and diluted share for the comparable period in 2009. There was $5,000 of revenue for the fourth quarter of 2010, compared with $2.0 million for the fourth quarter of 2009. Operating expenses for the quarter ended December 31, 2010 were $5.0 million compared with $3.9 million for the quarter ended December 31, 2009 due to the more advanced clinical development of PX-866 and preclinical activities associated with ONT-10.

                    *        *        *

COMPLAINT - 8

**BADGLEY MULLINS TURNER PLLC**
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

**Financial Guidance**

*The Company believes the following financial guidance to be correct as of the date provided. The Company is providing this guidance as a convenience to investors and assumes no obligation to update it.*

Expenses in 2011 are expected to be higher when compared to 2010, primarily as a result of the more advanced clinical development of PX-866 and IND-enabling preclinical development activities for ONT-10. The Company currently expects cash used in operations in 2011 to be approximately $23.0 million. As a result, the Company estimates that its existing cash, cash-equivalents and short-term investments will be sufficient to fund operations for at least the next 12 months.

31.     On March 14, 2011, Defendants caused the Company to file with the U.S. Securities and Exchange Commission ("SEC") an annual report on Form 10-K (the "2010 10-K"). The 2010 10-K was signed by the Defendants, and reiterated the financial results announced on March 10, 2011. The 2010 10-K also contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX Certifications") signed by defendants Kirkman and Eastland. The SOX Certifications set forth:

I, [Robert L. Kirkman, M.D./Julia M. Eastland], certify that:

1. I have reviewed this annual report on Form 10-K of Oncothyreon Inc., (the "Registrant");

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report;

4. The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Registrant and have:

COMPLAINT - 9

**BADGLEY MULLINS TURNER PLLC**

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter (the Registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting; and

5. The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditors and the audit committee of the Registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely     to adversely affect the Registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal control over financial reporting.

*     *     *

I, [Robert L. Kirkman, M.D./Julia M. Eastland], certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that the Annual Report of Oncothyreon Inc. on Form 10-K for the fiscal year ended December 31, 2010, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 and that information contained in such Annual Report on Form 10-K fairly presents, in all material respects, the financial condition and results of operations of Oncothyreon Inc.

COMPLAINT - 10

BADGLEY MULLINS TURNER PLLC

32.     On April 28, 2011, Defendants caused the Company to announce "its intention to offer, subject to market and other conditions, shares of its common stock in an underwritten public offering."   The following day, Defendants announced further details regarding the offering in a press release that set forth the following:

> Oncothyreon Inc. (NASDAQ: ONTY) today announced that it has priced an underwritten public offering of 10,000,000 shares of its common stock at a price to the public of $4.00 per share for gross proceeds of $40.0 million. The net proceeds from the sale of the shares, after deducting the underwriters' discounts and other estimated offering expenses payable by Oncothyreon, will be approximately $37.4 million. Oncothyreon has also granted the underwriters a 30-day option to purchase up to an additional 15 percent of the shares of common stock offered in the public offering to cover over-allotments, if any, which would result in additional gross proceeds of approximately $6.0 million if exercised in full.

> Oncothyreon currently intends to use the net proceeds of the offering to fund the development of PX-866, Oncothyreon's PI-3 Pan-isoform irreversible Kinase inhibitor, and ONT-10, Oncothyreon's proprietary follow-on vaccine to Stimuvax. Stimuvax, currently in a Phase 3 pivotal trial, is a vaccine for patients with non-small cell lung cancer and is partnered with Merck KGaA.  The offering proceeds may also be used for general corporate purposes. The offering is expected to close on or about May 4, 2011, subject to the satisfaction of customary closing conditions.

33.     On March 6, 2012, Defendants issued a press release announcing the Company's financial results for 2011.  The press release set forth, in relevant part:

> Oncothyreon Inc. (NASDAQ: ONTY) today reported financial results for the year and quarter ending December 31, 2011.

> Net loss from operations for the year ended December 31, 2011 was $24.7 million, compared with $19.5 million for the year ended December 31, 2010.  The increase in net loss from operations resulted from an increase in research and development expenses to $17.9 million from $11.6 million, offset by a decrease in general and administrative expenses to $6.9 million from $7.9 million.  The increase in research and development expenses in 2011 compared to 2010 was primarily the result of increased development activity for Oncothyreon's product candidates, PX-866 and ONT-10, and the upfront payment related to the license for ONT-701.  The decrease in general and administrative expenses was primarily

COMPLAINT - 11

**BADGLEY MULLINS TURNER PLLC**

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

the result of lower legal, accounting and consulting expenses related to regulatory compliance.

Net loss for the year ended December 31, 2011 was $42.7 million, or $1.12 per basic and diluted share, compared with net loss of $15.6 million, or $0.58 per basic and diluted share for the year ended December 31, 2010.  The increase in net loss was primarily due to $17.6 million in non-cash expense from the change in fair value of warrant liability for the year ended December 31, 2011 versus $3.0 million in non-cash income for the year ended December 31, 2010, and an increase in operating expenses to $24.8 million in 2011 from $19.5 million in 2010.

Net loss from operations for the quarter ended December 31, 2011 was $6.6 million compared with $5.0 million for the quarter ended December 31, 2010. The increase in net loss from operations resulted from an increase in research and development expenses to $4.2 million from $3.5 million and an increase in general and administrative expenses to $2.4 million from $1.5 million.  The increase in research and development expenses in the 2011 fourth quarter compared to the 2010 fourth quarter was primarily the result of increased development activity for Oncothyreon's product candidates, PX-866 and ONT-10.  The increase in general and administrative expenses was primarily the result of non-cash stock based compensation related to the change in valuation of restricted share units.

Net loss for the quarter ended December 31, 2011 was $11.5 million, or $0.27 per basic and diluted share, compared with net loss of $6.2 million or $0.20 per basic and diluted share for the comparable period in 2010. The increase in net loss was primarily the result of $4.8 million in non-cash expense from the change in fair value of warrant liability for the quarter ended December 31, 2011 versus $1.7 million in non-cash expense for the quarter ended December 31, 2010, and an increase in operating expenses to $6.6 million in the 2011 fourth quarter from $5.0 million in the 2010 fourth quarter.

*        *        *

**Financial Guidance**

*Oncothyreon believes the following financial guidance to be correct as of the date provided.  Oncothyreon is providing this guidance as a convenience to investors and assumes no obligation to update it.*

Expenses in 2012 are expected to be higher when compared to 2011, primarily as a result of the more advanced clinical development of PX-866 and the Phase 1 clinical trial of ONT-10. Oncothyreon currently expects cash used in operations in 2012 to be between approximately $30.0 and approximately $33.0 million. As a result, Oncothyreon estimates that its existing cash, cash-equivalents and investments will be sufficient to fund operations for at least the next 12 months.

BADGLEY MULLINS TURNER PLLC

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

34.     On March 9, 2012, Defendants caused the Company to file with the SEC an annual report on Form 10-K (the "2011 10-K").  The 2011 10-K was signed by the Defendants, and reiterated the financial results announced on March 6, 2012.  The 2011 10-K also contained SOX Certifications signed by defendants Kirkman and Eastland, which were substantially similar to those set forth above.

35.     On March 28, 2012, Defendants announced that the Company would conduct another public offering.  Defendants gave further details in a March 29, 2012 press release, which set forth, in relevant part:

> Oncothyreon Inc. (NASDAQ: ONTY) today announced that it has priced an underwritten public offering of 11,750,000 shares of its common stock at a price to the public of $4.00 per share for gross proceeds of $47.0 million. The net proceeds from the sale of the shares, after deducting the underwriters' discounts and other estimated offering expenses payable by Oncothyreon, will be approximately $43.6 million. Oncothyreon has also granted the underwriters a 30-day option to purchase up to an additional 15 percent of the shares of common stock offered in the public offering to cover overallotments, if any, which would result in additional gross proceeds of approximately $7.1 million if exercised in full.

> Oncothyreon currently intends to use the net proceeds of the offering to fund the development of PX-866, Oncothyreon's irreversible pan-isoform PI-3 kinase inhibitor, and ONT-10, Oncothyreon's proprietary follow-on vaccine to Stimuvax. Stimuvax, currently in a Phase 3 pivotal trial, is a vaccine for patients with non-small cell lung cancer and is partnered with Merck KGaA. The offering proceeds may also be used for general corporate purposes. The offering is expected to close on or about April 4, 2012, subject to the satisfaction of customary closing conditions.

> Cowen and Company, LLC is acting as sole book-running manager for the offering and Stifel, Nicolaus & Company, Incorporated is acting as co-manager. Cantor Fitzgerald & Co., Rodman & Renshaw, LLC and Wedbush PacGrow Life Sciences acted as financial advisors to Oncothyreon in connection with this offering.

36.     Defendants' statements set forth above were materially false and/or misleading because Defendants failed to disclose the following: (1) that the clinical trial of L-BLP25 was

COMPLAINT - 13

BADGLEY MULLINS TURNER PLLC

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

not proceeding according to plan; (2) that as a result, it was unlikely that L-BLP25 would be able to be marketed at any point in the foreseeable future; (3) that Defendants had failed to make adjustments on the diluted earnings and loss per share in connection with warrants issued in May 2009 and September 2010; (4) that the Company lacked adequate internal controls; (5) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; and (6) that Defendants lacked any reasonable basis for their positive statements about the Company and its prospects.

### The Truth Begins to Emerge

37.    On August 13, 2012, Defendants caused the Company to file with the SEC an amended annual report Form 10-K/A for the fiscal year ended December 31, 2011.  In the Form 10-K/A, Defendants revealed the following:

**Description of Restatement**

In May 2009 and September 2010, we issued warrants to purchase our common stock in connection with equity financings (see Note 7). Under certain circumstances, such warrants may be settled in common stock or cash at the election of the holders. Because these instruments may be settled for cash in certain circumstances, the warrants are recorded as a liability at fair value on the balance sheet. The change in fair value of the warrants is reflected as other income or expense in our consolidated statement of operations.

The calculation of diluted earnings (loss) per share requires that, to the extent the average market price of the underlying shares for the reporting period exceeds the exercise price of the warrants and the presumed exercise of such securities are dilutive to earnings (loss) per share for the period, adjustments to net income or net loss used in the calculation are required to remove the change in fair value of the warrants for the period. Likewise, adjustments to the denominator are required to reflect the related dilutive shares. We failed to make such adjustments to the diluted earnings (loss) per share calculations for the periods discussed below.

//

//

COMPLAINT - 14

**BADGLEY MULLINS TURNER PLLC**

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

A summary of the impact of the correction of the errors on the diluted earnings (loss) per share amounts follows:

| | Three Months Ended September 30, 2011 (unaudited) | Three Months Ended March 31, 2010 (unaudited) | Year Ended December 31, 2010 |
|---|---|---|---|
| Diluted earnings (loss) per share — as originally reported | $  0.22 | $(0.03) | $  (0.58) |
| Difference in diluted earnings (loss) per share | (0.37) | (0.17) | (0.14) |
| Diluted earnings (loss) per share — restated | $  (0.15) | $(0.20) | $  (0.72) |

The corrections have no impact on our consolidated balance sheets, net income or (loss), basic earnings (loss) per share, or the consolidated statements of cash flows or stockholders' equity for any of the above mentioned periods. For a detailed reconciliation of diluted earnings (loss) per share amounts as originally reported to restated amounts, see Note 2 to the consolidated financial statements contained in Part II — Item 8 of this Amended Filing.

**Internal Control Considerations**

As a result of the restatement, our management determined that there was a control deficiency in our company's internal control over financial reporting that constitutes a material weakness, as discussed in Part II — Item 9A of the Amended Filing. A material weakness is a deficiency, or combination of control deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim consolidated financial statements will not be prevented or detected on a timely basis.

38.      On December 19, 2012, before the market opened, Defendants issued a press release entitled "Oncothyreon Announces that L-BLP25 (Stimuvax®) Did Not Meet Primary Endpoint of Improvement in Overall Survival in Pivotal Phase 3 Trial in Patients with Non-Small Cell Lung Cancer."  The press release revealed, in relevant part:

Oncothyreon Inc. (Nasdaq: ONTY) today announced that the pivotal Phase 3 clinical trial of L-BLP25 (formerly referred to as Stimuvax®) known as START did not meet its primary endpoint of an improvement in overall survival in patients with unresectable, locally advanced stage IIIA or stage IIIB non-small cell lung cancer (NSCLC).  The trial was conducted by Merck Serono, a division of Merck KGaA of Darmstadt, Germany, under a license agreement with Oncothyreon.

Despite not meeting the primary endpoint, notable treatment effects were seen for L-BLP25 in certain subgroups. Further analyses are planned in the coming weeks to explore the potential benefit-risk profile of L-BLP25 in certain populations. Merck Serono will discuss these data with external experts and regulatory

COMPLAINT - 15

**BADGLEY MULLINS TURNER PLLC**
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

authorities over the coming months.  More detailed results from the START trial will be submitted for publication in a peer reviewed journal and presentation at upcoming scientific meetings.

"We believe that the START study will offer important scientific insights to the potential for immunotherapies in the treatment of this devastating disease and we intend to discuss these data with scientific community and regulatory authorities to gain their advice on potential next steps," said Dr. Annalisa Jenkins, Head of Global Drug Development and Medical for Merck Serono. The ongoing clinical program of L-BLP25 that includes studies in the Asia Pacific region will continue pending discussion with relevant regulatory agencies.

START was a randomized, multicenter, double-blind, placebo-controlled trial that assessed the efficacy, safety and tolerability of L-BLP25 in patients with unresectable stage III NSCLC who achieved a response or stable disease after chemoradiotherapy. Patients were randomized to receive either a single low dose of cyclophosphamide followed by L-BLP25 (weekly injections for eight weeks followed by injections every six-weeks until progression) plus best supportive care (BSC) or placebo plus BSC. More than 1,500 patients from 33 countries were recruited into the START trial.

Patient safety in the START trial was monitored frequently by an independent data monitoring committee and no new or unexpected safety concerns were noted for the study. In prior clinical studies, the most frequently reported adverse events included injection site reactions, flu-like symptoms, nausea, cough, fatigue, and dyspnea.

"These results from the START trial are disappointing, both for patients with NSCLC and for the many who have been involved in the L-BLP25 program," said Robert L. Kirkman, M.D., President and CEO of Oncothyreon.  "L-BLP25 has been under development for more than a decade at Oncothyreon and its predecessor company, Biomira Inc. of Edmonton, Alberta, in collaboration with Merck KGaA.  The contributions of many employees at each company, committed investigators and, particularly, the many patients who participated in multiple clinical trials over many years are gratefully acknowledged."

39.     Upon the release of this news, shares of the Company's stock fell $2.31 per share, or over 50% to close on December 19, 2012 at $2.19 per share.

40.     The Company's share price has not recovered to any significant extent.

//

//

COMPLAINT - 16

BADGLEY MULLINS TURNER PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

## DERIVATIVE AND DEMAND ALLEGATIONS

41.     Plaintiff brings this action derivatively in the right and for the benefit of Oncothyreon to redress the breaches of fiduciary duty and other violations of law by Defendants.

42.     Plaintiff will adequately and fairly represent the interests of Oncothyreon and its shareholders in enforcing and prosecuting its rights.

43.     The Board currently consists of the following six (6) directors: defendants Kirkman, Henney, Jackson, Spiegelman, Stoughton and Williams.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons:

> a.   During the Relevant Period, defendants Spiegelman, Stoughton and Williams (a majority of the Board) served as members of the Audit Committee. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee were and are responsible for, *inter alia*, reviewing the adequacy of the Company's internal controls, reviewing the integrity of the Company's financial statements, and reviewing the Company's earnings press releases and guidance.  Defendants Spiegelman, Stoughton and Williams breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other public disclosures and failed to ensure that adequate internal controls were in place. Therefore, defendants Spiegelman, Stoughton and Williams each face a substantial likelihood of liability for their breach of fiduciary duties, and any demand upon them is futile;

COMPLAINT - 17

BADGLEY MULLINS TURNER PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

b.  The principal professional occupation of defendant Kirkman is his employment with Oncothyreon as its President and CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.  In addition, in the Company's Proxy Statement filed with the SEC on Form DEF 14A on April 26, 2013, Defendants admit that Kirkman is not independent.  Thus, defendant Kirkman lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action; and

c.  Defendants Kirkman, Henney, Jackson, Spiegelman, Stoughton and Williams (i.e. the entire Board) signed the false and misleading 2010 10-K and 2011 10-K, as set forth above.  The 2010 10-K and the 2011 10-K were materially false and misleading because (among other things) they contained false statements about the Company's internal controls and failed to disclose the truth about the L-BLP25 clinical trials.  Thus, defendants Kirkman, Henney, Jackson, Spiegelman, Stoughton and Williams each face a substantial likelihood of liability for their breach of fiduciary duties, and any demand upon them is futile.

## COUNT I

**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION**

44.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

45.  As alleged in detail herein, each of the Defendants (and particularly the Audit

COMPLAINT - 18

**BADGLEY MULLINS TURNER PLLC**
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

Committee Defendants) had a duty to ensure that Oncothyreon disseminated accurate, truthful and complete information to its shareholders.

46.     Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Oncothyreon shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings, press releases, conference calls, and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

47.     As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

### COUNT II

**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES
FOR FAILING TO MAINTAIN INTERNAL CONTROLS**

48.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

49.     As alleged herein, each of the Defendants (and particularly the Audit Committee Defendants) had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

50.     Defendants willfully ignored the obvious and pervasive problems with Oncothyreon's internal controls and practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence.

51.     As a direct and proximate result of the Defendants' foregoing breaches of

COMPLAINT - 19

**BADGLEY MULLINS TURNER PLLC**

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

fiduciary duties, the Company has sustained damages.

## COUNT III

### AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY

52.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

53.     Defendants owed and owe Oncothyreon fiduciary obligations.  By reason of their fiduciary relationships, Defendants specifically owed and owe Oncothyreon the highest obligation of good faith, fair dealing, loyalty and due care.

54.     Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

55.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, Oncothyreon has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

56.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

57.     Plaintiff, on behalf of Oncothyreon, has no adequate remedy at law.

## COUNT IV

### AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT

58.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

59.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Oncothyreon.

COMPLAINT - 20

BADGLEY MULLINS TURNER PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

60.     Plaintiff, as a shareholder and representative of Oncothyreon, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

## COUNT V

### AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Oncothyreon, for which they are legally responsible.  In particular, Defendants abused their positions of authority by causing or allowing Oncothyreon to misrepresent material facts regarding the L-BLP25 clinical trials, and the Company's financial position and business prospects.

63.     As a direct and proximate result of Defendants' abuse of control, Oncothyreon has sustained significant damages.

64.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

65.     Plaintiff, on behalf of Oncothyreon, has no adequate remedy at law.

## COUNT VI

### AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT

66.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

67.     Defendants had a duty to Oncothyreon and its shareholders to prudently

COMPLAINT - 21

**BADGLEY MULLINS TURNER PLLC**

Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington 98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Oncothyreon.

68.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Oncothyreon in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Oncothyreon's affairs and in the use and preservation of Oncothyreon's assets.

69.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Oncothyreon to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Oncothyreon, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged Oncothyreon.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing Oncothyreon to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's

COMPLAINT - 22

BADGLEY MULLINS TURNER PLLC
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board

C. Awarding to Oncothyreon restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D. Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.


DATED this 30th day of April, 2013.

      BADGLEY MULLINS TURNER PLLC

      s/ Duncan C. Turner
      Duncan C. Turner, WSBA No. 20597
      4750 Columbia Center
      701 Fifth Avenue
      Seattle, Washington, 98104
      Telephone:  (206) 621-6566
      Facsimile:  (206) 621-9686
      Email:  duncanturner@badgleymullins.com
      **Attorney for Plaintiff**

      *Pending pro hac vice:*
      **THE WEISER LAW FIRM, P.C.**
      ROBERT B. WEISER
      BRETT D. STECKER
      JEFFREY J. CIARLANTO
      22 Cassatt Avenue, First Floor
      Berwyn, PA 19312
      Telephone:  (610) 225-2677
      Facsimile:  (610) 408-8062
      **Attorney for Plaintiff**

**BADGLEY MULLINS TURNER PLLC**
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*Pending pro hac vice:*
**THE WEISER LAW FIRM, P.C.**
KATHLEEN A. HERKENHOFF
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Phone:  (858) 794-1441
Facsimile:  (858) 794-1450
**Attorney for Plaintiff**

COMPLAINT - 24

**BADGLEY MULLINS TURNER PLLC**
Columbia Center
701 Fifth Avenue, Suite 4750
Seattle, Washington  98104
Telephone: (206) 621-6566
Fax: (206) 621-9686