1

2

HONORABLE JOHN C. COUGHENOUR

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

9

| | |
|---|---|
| RICHARD WEINSTEIN, derivatively on behalf of ONCOTHYREON INC., | Case No. 2:13-cv-00769-JCC |
| Plaintiff, | **ONCOTHYREON INC.'S MOTION TO DISMISS** |
| v. | |
| ROBERT L. KIRKMAN, JULIA M. EASTLAND, CHRISTOPHER S. HENNEY, RICHARD L. JACKSON, DANIEL K. SPIEGELMAN, W. VICKERY STOUGHTON and DOUGLAS E. WILLIAMS, | **NOTE ON MOTION CALENDAR: AUGUST 23, 2013** |
| Defendants, | **ORAL ARGUMENT REQUESTED** |
| and | |
| ONCOTHYREON INC., | |
| Nominal Defendant. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ONCOTHYREON'S MOTION TO DISMISS
Case No. 2:13-cv-00769-JCC

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ..................................................................................................2

   A. Oncothyreon..................................................................................................2

   B. Oncothyreon's Board of Directors................................................................3

   C. The L-BLP25 Phase 3 START Trial .............................................................5

   D. Oncothyreon's Restatement of Diluted Earnings Per Share .........................8

   E. Procedural History .........................................................................................9

III. ANALYSIS.......................................................................................................10

   A. The Oncothyreon Directors Are Independent...............................................11

   B. The Oncothyreon Directors Are Disinterested. ...........................................13

     1. The Directors Received No Personal Benefit. .......................................13

     2. The Directors Do Not Face A Substantial Likelihood Of Liability.......................14

       a. *Signing SEC Filings* ........................................................................16

       b. *"Lack of Oversight"* .......................................................................19

       c. *Audit Committee Service* .................................................................20

IV. CONCLUSION.................................................................................................21

ONCOTHYREON'S MOTION TO DISMISS – i
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abely v. Aeterna Zentaris Inc.*,
   No. 12 Civ. 4711, 2013 WL 2399869 (S.D.N.Y. May 29, 2013).......................................6

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) ...............................................................................10, 14, 15

*Ash v. McCall*,
   No. CIV.A. 17132, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) ...................................20

*Beam v. Stewart*,
   845 A.2d 1040 (Del. 2004) .......................................................................................11, 12

*Beneville v. York*,
   769 A.2d 80 (Del. Ch. 2000)............................................................................................11

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ..........................................................................................10, 11

*Cede & Co. v. Technicolor, Inc.*,
   634 A.2d 345 (Del. 1993) ................................................................................................15

*Desimone v. Barrows*,
   924 A.2d 908 (Del. Ch. 2007)....................................................................................19, 20

*Fagin v. Gilmartin*,
   432 F.3d 276 (3d Cir. 2005)............................................................................................12

*Grassmueck v. Barnett*,
   281 F. Supp. 2d 1227 (W.D. Wash. 2003).......................................................................15

*Grimes v. Donald*,
   673 A.2d 1207 (Del. 1996) ..............................................................................................14

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003)....................................................................................18, 20

*In re Caremark Int'l, Inc. Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996).........................................................................................19

*In re Citigroup Inc. S'holder Deriv. Litig.*,
   964 A.2d 106 (Del. Ch. 2009)...............................................................................13, 17, 18

ONCOTHYREON'S MOTION TO DISMISS – ii
Case No. 2:13-cv-00769-JCC

*In re Coinstar Inc. S'holder Deriv. Litig.*,
   No. C11-133, 2011 WL 5553778 (W.D. Wash. Nov. 14, 2011) .............................. *passim*

*In re F5 Networks, Inc. Deriv. Litig.*,
   No. C06-794, 2007 WL 2253382 (W.D. Wash. Aug. 1, 2007) ........................................3, 9

*In re Gen. Motors Class H S'holders Litig.*,
   734 A.2d 611 (Del. Ch. 1999)........................................................................................13

*In re IAC/InterActiveCorp. Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007)............................................................................12

*In re Paxson Commc'n Corp. S'holders Litig.*,
   No. Civ. A. 17568, 2001 WL 812028 (Del. Ch. July 12, 2001) ......................................12

*In re Silicon Graphics, Inc.*,
   183 F.3d 970 (9th Cir. 1999) ...................................................................................13, 14

*In re Walt Disney Co. Deriv. Litig.*,
   906 A.2d 27 (Del. 2006) ................................................................................................16

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991)........................................................................................................10

*MCG Capital Corp. v. Maginn*,
   No. 4521-CC, 2010 WL 1782271 (Del. Ch. May 5, 2010) ..............................................15

*O'Reilly v. Transworld Healthcare, Inc.*,
   745 A.2d 902 (Del. Ch. 1999).........................................................................................17

*Orman v. Cullman*,
   794 A.2d 5 (Del. Ch. 2002)............................................................................................13

*Pfeffer v. Redstone*,
   965 A.2d 676 (Del. 2009) ..............................................................................................17

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Lundgren*,
   579 F. Supp. 2d 520 (S.D.N.Y. 2008)...........................................................................20

*Potter v. Hughes*,
   546 F.3d 1051 (9th Cir. 2008) .......................................................................................10

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) .......................................................................................11, 14

*Rattner v. Bidzos*,
   No. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ..............................................20

ONCOTHYREON'S MOTION TO DISMISS – iii
Case No. 2:13-cv-00769-JCC

*Selectica, Inc. v. Versata Enters., Inc.*,
    No. 4241-VCN, 2010 WL 703062 (Del. Ch. Feb. 26, 2010),
    *aff'd*, 5 A.3d 586 (Del. 2010) .......................................................................................................12

*Spiegel v. Buntrock*,
    571 A.2d 767 (Del. 1990) .........................................................................................................10

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) .........................................................................................15, 16, 19

*White v. Panic*,
    783 A.2d 543 (Del. 2001) .........................................................................................................10

**STATUTES**

Fed. R. Civ. P. 23.1(b)(3).........................................................................................10, 14, 20

**OTHER AUTHORITIES**

Del. Code Ann. tit. 8, § 102(b)(7) ....................................................................................15, 16

ONCOTHYREON'S MOTION TO DISMISS – iv
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

# I. __INTRODUCTION__

Nominal Defendant Oncothyreon Inc., a Delaware corporation ("Oncothyreon" or the "Company"), respectfully moves to dismiss the Verified Amended Shareholder Derivative Complaint [Dkt. No. 11] (the "Amended Complaint" or "AC") filed by Plaintiff Richard Weinstein.

Oncothyreon is a publicly traded biotechnology company developing innovative cancer treatments. Plaintiff has sued Oncothyreon's current Board of Directors, claiming primarily that the Company failed to properly disclose certain negative information regarding the Phase 3 clinical trial for one of Oncothyreon's products. Plaintiff's claims are all asserted as derivative claims, *i.e.*, they belong to Oncothyreon, are asserted on Oncothyreon's behalf, and seek recovery for unspecified injuries allegedly sustained by the Company (not by Plaintiff or other Oncothyreon shareholders). But under well-established Delaware law, Plaintiff lacks standing to assert those derivative claims because he failed to make a pre-suit demand on Oncothyreon's Board of Directors, and Plaintiff cannot satisfy his heavy burden of establishing that the demand requirement should be excused.

It is a fundamental tenet of corporate law that a corporation's duly elected board of directors governs corporate affairs. That governance includes the critical decision whether to pursue litigation on the corporation's behalf. As a matter of law, corporate directors are presumed to be capable of exercising their business judgment in determining whether litigation is in the best interests of the corporation and its shareholders. For those reasons, a derivative lawsuit is a rare and extraordinary procedure, because it permits a single shareholder to usurp the role of the board and unilaterally force a corporation to pursue litigation (often against its own management).

Before filing this lawsuit, Plaintiff chose not to make demand on Oncothyreon's Board of Directors to pursue the claims at issue. Under Delaware law, therefore, Plaintiff must establish that such a demand would have been "futile." That is an extremely difficult standard to meet, and one that is rarely satisfied. Akin to alleging fraud, Plaintiff must plead

ONCOTHYREON'S MOTION TO DISMISS – 1
Case No. 2:13-cv-00769-JCC

1   particularized facts, specific to <u>each</u> of Oncothyreon's six Directors, demonstrating that at

2   least half of those Directors (1) lack independence because they are so dominated or

3   controlled by an interested person as to be incapable of exercising their own business

4   judgment, or (2) are not "disinterested," either because the Directors stand to receive some

5   unique personal benefit or because they face a substantial likelihood of personal liability.

6   As discussed below, a well-developed body of law establishes what Plaintiff must allege to

7   satisfy Delaware's exacting "demand futility" test.

8         The Amended Complaint falls far short of establishing that demand on Oncothyreon's

9   Board of Directors would have been futile.  Plaintiff does not even attempt to allege that a

10   majority of the Company's Directors lack independence.  Nor does Plaintiff allege that the

11   Directors stand to reap some disabling personal benefit not shared by Oncothyreon's

12   shareholders.  Consequently, to proceed with his derivative claims, Plaintiff must allege

13   specific facts establishing that at least half of the Oncothyreon Directors face not merely the

14   possibility of liability, but *a substantial likelihood of liability*.  In an attempt to carry that

15   heavy burden, Plaintiff relies on conclusory allegations — unsupported by any facts, let

16   alone the particularized facts required under Delaware law — that Oncothyreon's Directors

17   either failed to disclose material information or generally failed to supervise the Company's

18   public disclosures (which Plaintiff claims, again without factual support, were false and

19   misleading).  Such bare allegations have been routinely and squarely rejected by courts,

20   including this one, as insufficient to excuse pre-suit demand.  The Amended Complaint

21   should be dismissed with prejudice.

22                             **II.  BACKGROUND**

23         The following background facts are drawn from Plaintiff's Amended Complaint or

24   from sources of which the Court properly may take judicial notice.

25   **A.  Oncothyreon**

26         Oncothyreon, a Delaware corporation headquartered in Seattle, Washington, is a public

27   biotechnology company specializing in the development of innovative therapeutic products

28

ONCOTHYREON'S MOTION TO DISMISS – 2
Case No. 2:13-cv-00769-JCC

for the treatment of cancer.  *See* AC ¶¶ 2, 34.  Oncothyreon's common stock trades on the NASDAQ Global Market under the symbol ONTY.  *See* AC ¶ 40.  Oncothyreon focuses on developing and commercializing novel synthetic vaccines and targeted small molecules that have the potential to improve the lives and long-term outcomes of cancer patients.  *See* AC ¶¶ 2, 34.  The Company's primary focus is advancing its pipeline of product candidates, including L-BLP25, PX-866, and ONT-10, either on the Company's own or in collaboration with various strategic partners.  *See* Oncothyreon Inc., Annual Report (Form 10-K), at 2 (Mar. 14, 2013) (the "2012 10-K").[1]

**B.  <u>Oncothyreon's Board of Directors</u>**

Oncothyreon currently has a six-member, classified Board of Directors, elected by shareholders to serve staggered, three-year terms.  *See* 2012 10-K at 58-60.  Plaintiff has named each of Oncothyreon's current Directors as a defendant in this lawsuit.  *See* AC ¶¶ 20, 22-26.  Only one of Oncothyreon's six Directors — President and CEO Robert L. Kirkman, M.D. — is an Oncothyreon employee (*see id.*); the remainder are independent, outside directors.  A summary of each Director's relevant experience is set forth below.

**Robert L. Kirkman, M.D.**  Dr. Kirkman has served as a member of Oncothyreon's Board of Directors, and as Oncothyreon's President and CEO, since September 2006.  AC ¶ 20.  Prior to joining Oncothyreon, Dr. Kirkman was acting President and CEO (2005– 2006) and Chief Business Officer and Vice President (2004–2005) for Xcyte Therapies, Inc., a development-stage biopharmaceutical company.  2012 10-K at 58.  Dr. Kirkman also worked as Vice President of business development and corporate communications for

---

[1]  Relevant excerpts from the 2012 10-K, filed with the Securities and Exchange Commission on March 14, 2013, are attached as Exhibit A to the accompanying Declaration of Brian D. Buckley (the "Buckley Declaration" or "Buckley Decl.").  The Court may properly consider the 2012 10-K, and the other SEC filings included as exhibits to the Buckley Declaration, because those documents are incorporated by reference into the Amended Complaint, subject to judicial notice, or both.  *In re Coinstar Inc. S'holder Deriv. Litig.*, No. C11-133, 2011 WL 5553778, *2 (W.D. Wash. Nov. 14, 2011) (SEC filings and documents quoted in complaint are subject to judicial notice); *In re F5 Networks, Inc. Deriv. Litig.*, No. C06-794, 2007 WL 2253382, *1 (W.D. Wash. Aug. 1, 2007) (same).

ONCOTHYREON'S MOTION TO DISMISS – 3
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

Protein Design Labs, Inc. *Id.* Dr. Kirkman received his M.D. from Harvard University and his B.A. in Economics from Yale University. *Id.*

**Christopher S. Henney, Ph.D.** Dr. Henney has been a member of Oncothyreon's Board of Directors since March 2005 and has been the Chairman since September 2006. AC ¶ 22. Dr. Henney is the co-founder of publicly traded biotechnology companies Dendreon Corporation (where he also served as Chairman and CEO), Immunex Corporation, and ICOS Corporation, and he has served on the boards of directors of numerous biotechnology and biopharmaceutical companies. 2012 10-K at 59-60. Dr. Henney is also a former professor of immunology and microbiology at Johns Hopkins University and the University of Washington. Dr. Henney received his Ph.D. from the University of Birmingham, England. *Id.*

**Richard Jackson, Ph.D.** Dr. Jackson has been a member of Oncothyreon's Board of Directors since May 2003. AC ¶ 23. Dr. Jackson has over twenty-five years of senior executive experience at several biotechnology and pharmaceutical companies, as well as over twenty years of experience in academic medicine, and he has previously served as a director for several other biotechnology and pharmaceutical companies. 2012 10-K at 58. Dr. Jackson received his Ph.D. in microbiology and his B.S. in Chemistry from the University of Illinois. *Id.*

**Daniel K. Spiegelman** Mr. Spiegelman has been a member of Oncothyreon's Board of Directors since June 2008, and is a member of the Company's Audit Committee. AC ¶ 24. Mr. Spiegelman has significant executive experience with several biotechnology and biopharmaceutical companies, and also serves as a director for two other biopharmaceutical companies, Affymax, Inc. and Anthera Pharmaceuticals, Inc. 2012 10-K at 58-59. Mr. Spiegelman received his B.A. and his M.B.A. from Stanford University. *Id.* at 59.

**W. Vickery Stoughton** Mr. Stoughton has served on Oncothyreon's Board of Directors since June 1997 and is a member of the Company's Audit Committee. AC ¶ 24. Mr. Stoughton is currently President and CEO of Radia Genetics, a privately held gene

ONCOTHYREON'S MOTION TO DISMISS – 4
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

therapy company.  2012 10-K at 60.  Mr. Stoughton has significant senior executive experience at several medical devices companies, as well as at SmithKline Beecham Clinical Laboratories, Inc.  *Id.*  Mr. Stoughton has a B.S. in Chemistry from St. Louis University and an M.B.A. from the University of Chicago.  *Id.*

**Douglas E. Williams, Ph.D.**  Dr. Williams has been a member of Oncothyreon's Board of Directors since October 2009 and serves on the Company's Audit Committee.  AC ¶ 26. Dr. Williams is currently Executive Vice President of research and development at Biogen IDEC Inc., a publicly traded biotechnology company.  2012 10-K at 59.  Dr. Williams previously held numerous positions, including Director, President, CEO, Chief Scientific Officer, and Executive Vice President, Research and Development, for ZymoGenetics, Inc. *Id.*  Dr. Williams also previously held senior-level positions at Seattle Genetics, Inc., Immunex Corporation, and Amgen, Inc., and he has experience as a director for several other biotechnology and biopharmaceutical companies.  *Id.*  Dr. Williams has a B.S. in Biological Sciences from the University of Massachusetts, Lowell, and a Ph.D. in Physiology from SUNY-Buffalo's Roswell Park Cancer Institute.  *Id.*

In summary, Oncothyreon's Board of Directors comprises professionals with an impressive depth of collective experience, both in the biotechnology industry generally and the governance and management of public companies.

**C.    The L-BLP25 Phase 3 START Trial**

Oncothyreon's lead cancer vaccine product is called L-BLP25 (formerly known as Stimuvax).  AC ¶ 4.  L-BLP25 is designed to induce an immune response to destroy cancer cells that express a particular protein antigen that is widely expressed on many common cancers, including lung cancer, breast cancer, and colorectal cancer.  *Id.*  Pursuant to a December 2008 license agreement (which superseded a series of prior agreements dating back to 2001), Oncothyreon granted to Merck KGaA of Darmstadt, Germany ("Merck KGaA") the worldwide right and responsibility for the clinical development, commercialization, and manufacture of L-BLP25, in exchange for various cash payments

ONCOTHYREON'S MOTION TO DISMISS – 5
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

1  and royalties.  Oncothyreon Inc., Annual Report (Form 10-K), at 8-9 (Mar. 9, 2012) (the
2  "2011 10-K") (Buckley Decl. Ex. B); AC ¶ 6.

3      Beginning in January 2007, Merck KGaA began enrolling patients in a Phase 3 clinical
4  trial of L-BLP25, known as the START trial.  *See* 2011 10-K at 5-6.[2]  The START trial was
5  a randomized, multicenter, double-blind, placebo-controlled trial to assess the efficacy and
6  safety of L-BLP25 in patients with inoperable stage III non-small cell lung cancer,
7  compared to best supportive care alone.  In 2011, Merck KGaA completed enrollment in the
8  START Trial, with a total of 1,514 patients.  2011 10-K at 6.

9      The START trial's primary outcome measure was based on a comparison of survival
10  duration among all randomized study subjects.  START Trial Report at 1.  According to the
11  study design, the START trial data was to be analyzed at only three event-driven points
12  during the trial: two interim analyses, each triggered by the occurrence of a predetermined
13  event in the course of the study, followed by a final analysis, also triggered by the
14  occurrence of a predetermined event.  *Id.*  For each of the two interim analyses, the trial's
15  independent Data Monitoring Committee was to conduct both efficacy and futility analyses.
16  If the data available at the time of the interim analyses statistically established that L-BLP25
17  was either effective or ineffective, the Data Monitoring Committee could terminate the trial
18  early.  *See* Buckley Decl., Ex. D (CEO Letter to Shareholders from 2011 Annual Report).[3]
19  If those interim analyses did not demonstrate that L-BLP25 was either effective or
20  ineffective, the Data Monitoring Committee could allow the trial to proceed to its
21  conclusion, at which point it would analyze the final results.  *See id.*

22

23  [2]  *See also* Cancer Vaccine Study for Unresectable Stage III Non-small Cell Lung Cancer (START), *available
24  at*  www.clinicaltrials.gov/ct2/show/record/NCT00409188?term=stimuvax  (last  visited  July  17,  2013)  (the
    "START Trial Report") (Buckley Decl. Ex. C).  The Court may take judicial notice of the START Trial Report
25  because it is a document required to be filed with a public agency.  *See Abely v. Aeterna Zentaris Inc.*, No. 12
    Civ. 4711, 2013 WL 2399869, *22 (S.D.N.Y. May 29, 2013) (holding that clinical trial designs submitted to
26  government agencies and published at clinicaltrials.gov were subject to judicial notice).

    [3]  *Available at* http://files.shareholder.com/downloads/BIOM/2577804022x0x566057/C13C162E-CBCF-46A6-
27  BF19-93C2786553DA/01GY2C_Oncothyreon_AR_4-23-12.pdf (last visited July 17, 2013).

28

ONCOTHYREON'S MOTION TO DISMISS – 6                    FENWICK & WEST LLP
Case No. 2:13-cv-00769-JCC                              1191 SECOND AVENUE, 10TH FLOOR
                                                        SEATTLE, WASHINGTON 98101
                                                        telephone (206) 389-4510
                                                        facsimile (206) 389-4511

The START trial's design did not provide for or contemplate the release, availability, or analysis of interim data at any other point during the trial. *See* START Trial Report at 1. Notably, although Plaintiff's claims are largely premised on the allegation that Oncothyreon failed to disclose certain unspecified information about the progress of the START trial prior to December 19, 2012 (*see, e.g.*, AC ¶ 13), Plaintiff does <u>not</u> allege that Oncothyreon or any of the defendant Directors actually *possessed* any such undisclosed information. As discussed further below, that conspicuous omission renders the Amended Complaint legally deficient on its face, at least with respect to the allegations concerning the Company's disclosures about the START trial.

Oncothyreon communicated regularly with its shareholders and the market about the status of the START trial. <u>First</u>, as Plaintiff concedes, the Company's SEC filings were replete with warnings that Oncothyreon could not predict whether L-BLP25 would succeed in its clinical trials or receive regulatory approval. *E.g.*, AC ¶¶ 36-38.

<u>Second</u>, Oncothyreon promptly informed investors when it received information from Merck KGaA concerning the START trial's two interim analyses. On December 22, 2010, Merck Serono (a division of Merck KGaA) informed Oncothyreon that the independent Data Monitoring Committee had met in connection with the first interim analysis and had recommended that the study continue. *See* Oncothyreon Inc., Current Report (Form 8-K), at 2 (Dec. 22, 2010) (Buckley Decl. Ex. E). Oncothyreon immediately disclosed that information to the market. *Id.* On March 6, 2012, Merck Serono informed Oncothyreon that the Data Monitoring Committee had again met and had again recommended that the study continue. *See* Oncothyreon Inc., Current Report (Form 8-K), at 1 (Mar. 6, 2012) (the "March 6, 2012 8-K") (Buckley Decl. Ex. F). Oncothyreon immediately disclosed that information on March 6, 2012. *Id.*

<u>Third</u>, Oncothyreon also repeatedly informed investors that the Company expected to receive the final results from the START trial in late 2012 or early 2013. *See* 2011 10-K at 6 ("We expect that primary efficacy data will be reported in 2012."); March 6, 2012 8-K

ONCOTHYREON'S MOTION TO DISMISS – 7
Case No. 2:13-cv-00769-JCC

at 1 ("Final results from the study are expected in 2013."); Oncothyeon Inc., Quarterly Report for the Period Ending 3/31/12 (Form 10-Q), at 16 (May 7, 2012) (Buckley Decl. Ex. G) ("Merck KGaA … is currently expected to report the primary efficacy data in early 2013.").

On December 19, 2012, the Company announced that it had received the primary efficacy results from the START trial and that L-BLP25 did not meet its primary endpoint for improvement in overall survival in patients with inoperable stage III non-small cell lung cancer.  *See* Oncothyreon Inc., Current Report (Form 8-K), Ex. 99.1 (Dec. 19, 2012) (Buckley Decl. Ex. H).  Despite those results, Merck KGaA is continuing with a similar trial for patients of Asian descent, and is also investigating whether to conduct further study of promising results found in certain subgroups.  *See* 2012 10-K at 4-5, 17.

On May 16, 2013, Oncothyreon and Merck KGaA announced in separate press releases that additional statistical data from the results of the L-BLP25 START trial would be presented at the American Society of Clinical Oncology's 2013 Annual Meeting in Chicago. Press Release, Oncothyreon Inc., *Oncothyreon Announces Data for L-BLP25 and PX-866 to be Presented at American Society of Clinical Oncology Meeting* (May 16, 2013) (Buckley Decl. Ex. I).  In the Amended Complaint, Plaintiff references the Company's May 16, 2013 press release, but incorrectly asserts that the press release disclosed results from an *additional* trial relating to L-BLP25.  *See* AC ¶ 49.  In fact, as should be clear from a careful reading of the press release itself, it announced the presentation of additional statistical data relating to the START trial.

**D.   Oncothyreon's Restatement of Diluted Earnings Per Share**

On August 13, 2012, Oncothyreon filed an amended 2011 10-K with the SEC, in which Oncothyreon announced that it was amending and restating certain calculations of diluted earnings per share that were included in the Company's original 2011 10-K.  Oncothyreon Inc., Annual Report (Form 10-K/A (Amend. No. 1)), Explanatory Note (Aug. 13, 2012) (the "Amended 2011 10-K") (Buckley Decl. Ex. J).  The correction was necessary because the

ONCOTHYREON'S MOTION TO DISMISS – 8
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
telephone (206) 389-4510
facsimile (206) 389-4511

1   Company had failed to make certain adjustments relating to outstanding warrant shares

2   when calculating diluted earnings per share.   *Id.*   The correction did *not* affect

3   Oncothyreon's consolidated balance sheets, net income, basic earnings per share, or the

4   consolidated statements of cash flows or shareholders' equity.  *Id.*

5       Reflecting the fact that Oncothyreon's restatement of diluted earnings per share had no

6   effect on the Company's bottom line, the market did not respond to the restatement.   On

7   August 8, 2012, the day before Oncothyreon announced the restatement, the Company's

8   stock closed at $4.50 per share.  Eight days later, on August 16, 2012, the Company's stock

9   closed at $4.63 per share, and on August 31, 2012, the stock closed substantially up at $5.29

10  per share.  *See* Buckley Decl. Ex. K (historical stock quotes for ONTY).[4]

11  **E.   Procedural History**

12      On April 30, 2013, plaintiff Richard Weinstein, who claims to have been an

13  Oncothyreon shareholder since 2007, filed this putative shareholder derivative lawsuit

14  against various current Oncothyreon officers and directors:  Robert L. Kirkman, Julia M.

15  Eastland, Christopher S. Henney, Richard L. Jackson, Daniel K. Spiegelman, W. Vickery

16  Stoughton, and Douglas E. Williams.  *See generally* Complaint [Dkt. No. 1].

17      Pursuant to a stipulated scheduling order approved by the Court [Dkt. No. 10], Plaintiff

18  filed his Amended Complaint against the same defendants on June 24, 2013.   In the

19  Amended  Complaint,  Plaintiff  purports  to  assert  claims  derivatively  on  behalf  of

20  Oncothyreon against the individual defendants for breaches of fiduciary duty, unjust

21  enrichment,  abuse  of  control,  and  gross  mismanagement,  based  on  the  Company's

22  disclosures concerning the START trial and on the Company's restatement of diluted

23  earnings per share.  *See* AC ¶¶ 57-76.[5]

---

24
25  [4]  The Court can take judicial notice of Oncothyreon's stock prices.  *See F5 Networks*, 2007 WL 2253382 at *1
     ("Stock prices of publicly traded companies are subject to judicial notice.").

26  [5]  Pursuant to the agreed scheduling order entered by the Court [Dkt. No. 10], the individual defendants are not
27  required to answer or otherwise respond to Plaintiff's Amended Complaint until after the Court rules on the
     threshold demand issue raised by Oncothyreon's motion to dismiss.

28  ONCOTHYREON'S MOTION TO DISMISS – 9
     Case No. 2:13-cv-00769-JCC

     **FENWICK & WEST LLP**
     1191 SECOND AVENUE, 10TH FLOOR
     SEATTLE, WASHINGTON  98101
     telephone (206) 389-4510
     facsimile (206) 389-4511

1    Plaintiff acknowledges that he did not make any demand on Oncothyreon's Board of

2    Directors before filing this lawsuit.  AC ¶ 56.  Plaintiff instead alleges that demand would

3    have been "futile" because the members of the Board of Directors supposedly face a

4    "substantial likelihood of liability" in connection with Plaintiff's claims in this suit.  *Id.*

5    As analyzed below, the Amended Complaint does not remotely satisfy the Delaware

6    demand-futility standards and demand should not be excused.

7                                   **III.  ANALYSIS**

8        A shareholder who seeks to assert derivative claims on behalf of a corporation must

9    "state with particularity" any effort the shareholder made to obtain the desired action from

10   the corporation's board of directors, and "the reasons for not obtaining the action or making

11   the effort."  Fed. R. Civ. P. 23.1(b)(3); *accord Coinstar*, 2011 WL 5553778 at *3.  Where,

12   as here, the shareholder makes no pre-suit effort to obtain the desired result, he must instead

13   demonstrate that any such effort would have been futile.  Because Oncothyreon is a

14   Delaware corporation, Plaintiff must plead demand futility in accordance with Delaware

15   law.  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991) ("[A] court that is

16   entertaining a derivative action … must apply the demand futility exception as it is defined

17   by the law of the State of incorporation."); *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir.

18   2008) (same); *Coinstar*, 2011 WL 5553778 at *3.

19       "A cardinal precept of the General Corporation Law of the State of Delaware is that

20   directors, rather than shareholders, manage the business and affairs of the corporation."

21   *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v.*

22   *Eisner*, 746 A.2d 244 (Del. 2000).  Among the duties firmly entrusted to the directors is

23   assertion of the corporation's legal rights.  *White v. Panic*, 783 A.2d 543, 550 (Del. 2001).

24   "The purpose of pre-suit demand is to assure that the stockholder affords the corporation the

25   opportunity to address an alleged wrong without litigation, to decide whether to invest the

26   resources of the corporation in litigation, and to control any litigation which does occur."

27   *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990).  Thus, the demand requirement will be

28

ONCOTHYREON'S MOTION TO DISMISS – 10
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

excused only in those rare instances where demand would in fact be futile — *i.e.*, where it is shown that a majority of the board is incapable of exercising its independent business judgment in deciding whether to pursue litigation. *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004); *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).[6]

A shareholder's burden to show that pre-suit demand should be excused is particularly heavy in Delaware, where the courts *presume* as a matter of law that corporate directors are capable of exercising independent business judgment in response to a shareholder demand. *Beam*, 845 A.2d at 1048-49. That legal presumption cannot be overcome "by conclusory statements or mere notice pleading." *Brehm*, 746 A.2d at 254. To the contrary, demand is excused only where the would-be derivative plaintiff pleads "particularized facts creating a reasonable doubt that a majority of the Board would be ***disinterested*** or ***independent*** in making a decision on a demand." *Rales*, 634 A.2d at 931 (emphasis added).

As discussed below, Plaintiff here has not even attempted to establish a lack of independence for a majority of the Oncothyreon Directors. And Plaintiff's contention that those Directors are not disinterested is based on precisely the sorts of unsupported, conclusory allegations that Delaware courts have consistently rejected.

**A.   <u>The Oncothyreon Directors Are Independent</u>.**

To establish a lack of *independence*, a would-be derivative plaintiff must show that a majority of the corporate directors are so "'beholden' to [other interested persons] or so under their influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936. That is not a trivial notion; to overcome the presumption of independence afforded by Delaware law, the degree of domination by the interested person must be such that the compromised director "cannot be expected to exercise his or her independent business judgment without being influenced by the … personal consequences resulting from the decision." *Id.* Moreover, independence is a "fact-specific determination," and the

---

[6]  Where (as here) a board has an even number of directors, a would-be derivative plaintiff need only show that half of the directors are interested or lack independence. *Beneville v. York*, 769 A.2d 80, 85-86 (Del. Ch. 2000).

ONCOTHYREON'S MOTION TO DISMISS – 11
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

1   complaint must plead particularized facts regarding the person to whom the director is

2   beholden and for what specific purpose. *Beam*, 845 A.2d at 1049-50.

3       The Amended Complaint challenges the independence of only a single director:

4   Oncothyreon's President and CEO, Dr. Robert Kirkman. Plaintiff asserts that Dr. Kirkman

5   "lacks independence" because he receives "substantial monetary compensation and other

6   benefits" from the Company. AC ¶ 56c. But the Amended Complaint includes no facts

7   showing why Dr. Kirkman, simply by virtue of receiving a salary and benefits from

8   Oncothyreon, is unable to consider a demand fairly. *See In re Paxson Commc'n Corp.*

9   *S'holders Litig.*, No. Civ. A. 17568, 2001 WL 812028, *9 (Del. Ch. July 12, 2001)

10  ("generalized allegations" that employee directors receive "substantial salaries, bonuses,

11  payments, benefits, and/or other emoluments" are insufficient to excuse demand); *Fagin v.*

12  *Gilmartin*, 432 F.3d 276, 283 (3d Cir. 2005) ("The fact that a director is also an officer,

13  without more, is insufficient to establish the director's interest or lack of independence.").

14      Plaintiff also notes that Dr. Kirkman is not listed as "independent" in the Company's

15  April 26, 2013 Proxy Statement. AC ¶ 56c. But "independence" for the purposes of SEC or

16  other regulatory filings is not dispositive of independence under Delaware law. *See, e.g., In*

17  *re IAC/InterActiveCorp. Sec. Litig.*, 478 F. Supp. 2d 574, 603 n.15 (S.D.N.Y. 2007)

18  (director of Delaware corporation was independent for demand purposes despite not

19  meeting SEC definition of "independence" for purposes of audit committee service);

20  *Selectica, Inc. v. Versata Enters., Inc.*, No. 4241-VCN, 2010 WL 703062, *14 (Del. Ch.

21  Feb. 26, 2010) (directors were independent under Delaware law, though not considered

22  independent under SEC and NASDAQ rules), *aff'd*, 5 A.3d 586 (Del. 2010). Finally,

23  Plaintiff contends that Dr. Kirkman "lacks independence from demonstrably interested

24  directors" (AC ¶ 56c), but offers no particularized facts showing by whom Dr. Kirkman is

25  purportedly dominated and for what purpose – much less that any of the other directors are

26  actually "interested" (as discussed below). *Beam*, 845 A.2d at 1049-50. In sum, Plaintiff

27  has failed to adequately challenge Dr. Kirkman's independence.

28

ONCOTHYREON'S MOTION TO DISMISS – 12
Case No. 2:13-cv-00769-JCC

More to the point, even if Dr. Kirkman were deemed not to be independent, it would be of no consequence.  To establish demand futility, Plaintiff must establish that at least three of the six Oncothyreon Directors lack independence or are not disinterested.  This must be done on an individualized basis for each director.  *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009).  The Amended Complaint does not challenge the independence of any other Oncothyreon Director and, as discussed in detail below, none of the Directors are "interested" under demand-futility standards.

**B.   The Oncothyreon Directors Are Disinterested.**

To adequately plead that a corporate director is "interested" under Delaware law, a derivative complaint must contain particularized factual allegations demonstrating that the director is unable to fairly consider a shareholder demand because (1) the director stands to gain some material personal benefit not available to the company's shareholders, or (2) the director's conduct is "so egregious that a substantial likelihood of director liability exists." *In re Silicon Graphics, Inc.*, 183 F.3d 970, 990 (9th Cir. 1999) (internal quotation omitted), *abrogated on other grounds by South Ferry LP v. Killinger*, 542 F.3d 776 (9th Cir. 2008).  As addressed in the following sections, Plaintiff's Amended Complaint does not remotely satisfy either prong of that difficult standard.

**1.   The Directors Received No Personal Benefit.**

Plaintiff has not even attempted to establish the first prong of the "interestedness" test, *i.e.*, that the Oncothyreon Directors reaped some personal benefit from the alleged misconduct.[7]  The thrust of Plaintiff's allegations is that the Company failed to properly disclose material information regarding the L-BLP25 Phase 3 trial, and that the Company

---

[7]  Nor would it be sufficient for Plaintiff to merely allege some personal benefit to the Oncothyreon Directors. In the demand-futility context, the personal benefit must be "significant enough '*in the context of the director's economic circumstances*, as to have made it improbable that the director could perform her fiduciary duties to the … shareholders without being influenced by her overriding personal interest.'"  *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002) (quoting *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999)).  That issue is moot here because Plaintiff has not even made the threshold allegation that the Directors personally benefitted in some way.

ONCOTHYREON'S MOTION TO DISMISS – 13
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
telephone (206) 389-4510
facsimile (206) 389-4511

1   misstated certain diluted earnings per share calculations that were subsequently restated.

2   But even if those allegations were true, there is no claim in the Amended Complaint that the

3   purported disclosure violations redounded to the Directors' benefit.  Plaintiff does not

4   allege, for example, that any Oncothyreon Director sold stock or realized some other form

5   of personal gain.  And Plaintiff's specific demand-futility allegations say nothing at all

6   about any personal benefit to the Directors.  *See* AC ¶ 56.

7       The Amended Complaint does include a claim for unjust enrichment (Count III), but

8   utterly fails to specify how the Oncothyreon Directors were purportedly enriched.  Plaintiff

9   merely "seeks an order of this Court disgorging all profits, benefits, and other compensation

10  obtained by Defendants" (AC ¶ 67), but offers no facts regarding the source, nature, or

11  amounts of those "profits, benefits, and other compensation."   That sort of conclusory

12  allegation is the antithesis of the particularized factual pleading required to establish that the

13  Oncothyreon Directors are not disinterested.  *Rales*, 634 A.2d at 936.

14      **2.       The Directors Do Not Face A Substantial Likelihood Of Liability.**

15      Thus, Plaintiff's ability to establish demand futility, and therefore proceed derivatively

16  on behalf of Oncothyreon, hinges on Plaintiff's contention that the Directors face a

17  "substantial likelihood of personal liability."  *See Rales*, 634 A.2d at 936.  It is axiomatic

18  that neither the "mere threat of personal liability," nor the fact that a director is named as a

19  defendant in the derivative lawsuit, is sufficient to render that director "interested" under

20  Delaware law.  *Aronson*, 473 A.2d at 815; *Coinstar*, 2011 WL 5553778 at *3.  Were the

21  rule otherwise, demand futility would be automatically established in every putative

22  derivative suit where the current directors are named.  *See Grimes v. Donald*, 673 A.2d

23  1207, 1216 n.8 (Del. 1996) ("Demand is not excused simply because plaintiff has chosen to

24  sue all directors. … To hold otherwise would permit plaintiffs to subvert the particularity

25  requirements of Rule 23.1 simply by designating all the directors as targets.").   As

26  previously noted, to establish a substantial likelihood of liability for demand-futility

27  purposes, a director's conduct must be truly "egregious."  *Silicon Graphics*, 183 F.3d at 990.

28

ONCOTHYREON'S MOTION TO DISMISS – 14
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

In this case, the Oncothyreon Directors' liability exposure must be examined not only in light of the heightened Delaware pleading standards, but also against the backdrop of certain provisions in Oncothyreon's Certificate of Incorporation that limit the Directors' personal liability. Oncothyreon's Certificate includes the following exculpation clause:

> To the fullest extent permitted by the [Delaware General Corporation Law], as it presently exists or may hereafter be amended from time to time, a director of the corporation shall not be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.

Buckley Decl., Ex. L (Article X, 10.1).[8]   Under § 102(b)(7) of the Delaware General Corporation Law, a corporation is permitted to adopt such exculpatory provisions that significantly limit the personal liability of its directors. *See* Del. Code Ann. tit. 8, § 102(b)(7); *see also Coinstar*, 2011 WL 5553778 at *3. As such, Oncothyreon's Directors can face liability exposure only for "(i) breaches of the duty of loyalty, (ii) acts or omissions not in good faith or which involve intentional misconduct or knowing violations of the law, or (iii) transactions from which the director derives an improper personal benefit." *MCG Capital Corp. v. Maginn*, No. 4521-CC, 2010 WL 1782271, *19 (Del. Ch. May 5, 2010) (citing Del. Code Ann. tit. 8, § 102(b)(7)).

As discussed above, the Amended Complaint is devoid of any particularized allegation that the Directors somehow reaped improper personal benefits. Consequently, prong (iii) of § 102(b)(7) is inapplicable here.

In order to establish a breach of the duty of loyalty, a plaintiff must establish that a director violated some duty in "bad faith."[9]   *Stone v. Ritter*, 911 A.2d 362, 370-71 (Del. 2006). "[A] failure to act in good faith requires conduct that is qualitatively different from,

---

[8] The Court may properly take judicial notice of the Certificate of Incorporation and its exculpatory provision. *Coinstar*, 2011 WL 5553778 at *2; *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003).

[9] The duty of loyalty may also be breached where "the director either was on both sides of the transaction or 'derive[d] any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.'" *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 363 (Del. 1993) (quoting *Aronson*, 473 A.2d at 812). As discussed, Plaintiff has not alleged that the Oncothyreon Directors received any such benefit.

ONCOTHYREON'S MOTION TO DISMISS – 15
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (*i.e.*, gross negligence)." *Id.* at 369. Examples of bad faith include situations where the fiduciary intentionally breaks the law, "where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation," or "where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Stone*, 911 A.2d at 369 (quoting *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006)). "Conscious disregard," in turn, involves an "intentional dereliction of duty" which is "more culpable than simple inattention or failure to be informed of all facts material to the decision." *Walt Disney*, 906 A.2d at 66. Thus, for purposes of this case, prongs (i) and (ii) of § 102(b)(7) essentially resolve to the same standard: to face a "substantial likelihood of personal liability," Oncothyreon's Directors must have engaged in conduct tantamount to intentional wrongdoing. *See Walt Disney*, 906 A.2d at 67.

Plaintiff does not begin to make this showing. Instead, he relies on three related and insufficient allegations: (1) that the Directors signed Company SEC filings that allegedly omitted material information regarding the L-BLP25 Phase 3 trial and contained accounting errors related to the 2010 restatement (AC ¶ 56d); (2) that the Directors failed to adequately supervise Oncothyreon employees and ensure the accuracy of the Company's public disclosures (AC ¶ 56a); and (3) that certain Directors served on the Audit Committee and failed in their general oversight function with regard to the Company's public disclosures (AC ¶ 56b). As addressed below, those allegations are patently inadequate to establish that the Oncothyreon Directors are "interested" and therefore incapable of properly responding to a shareholder demand.

### a.   *Signing SEC Filings*

Plaintiff alleges that Oncothyreon's 2010 10-K and 2011 10-K filed with the SEC were "false and misleading," and that the Company's Directors face a substantial likelihood of liability merely by virtue of having signed those public filings. AC ¶ 56d. But with respect

ONCOTHYREON'S MOTION TO DISMISS – 16
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

1   to disclosure allegations of this type, in order to establish "a substantial likelihood of

2   liability that would excuse demand, plaintiffs must plead particularized factual allegations

3   that 'support the inference that the disclosure violation was made in *bad faith, knowingly or*

4   *intentionally*.'"   *Citigroup*, 964 A.2d at 132 (quoting *O'Reilly v. Transworld Healthcare,*

5   *Inc.*, 745 A.2d 902, 915 (Del. Ch. 1999) (emphasis added)).

6       Plaintiff first contends that Oncothyreon's 2010 10-K and 2011 10-K were false and

7   misleading because those filings allegedly omitted negative information regarding the

8   L-BLP25 Phase 3 START trial results, which the Company publicly disclosed on December

9   19, 2012.   But Plaintiff's allegations on this point are fatally flawed.   The Amended

10  Complaint correctly notes that, prior to December 19, 2012, Oncothyreon did not "disclose

11  that L-BLP25 was missing its main goal of improving overall survival of lung cancer."

12  AC ¶ 7.   But the Amended Complaint never alleges that Oncothyreon *knew* that information

13  before it was publicly disclosed.   More importantly, Plaintiff conspicuously fails to allege

14  that any of the Oncothyreon Directors *knew or should have known*, prior to December 19,

15  2012, that the START trial had failed to meet its primary endpoint.   Obviously, there can be

16  no duty to disclose information one does not possess.   As a threshold matter, therefore, the

17  Amended Complaint is deficient on its face because it lacks any allegation that Oncothyreon

18  or its Directors knew or had access to any material information regarding the outcome of the

19  START trial that they failed to properly disclose.   *See Pfeffer v. Redstone*, 965 A.2d 676,

20  687 (Del. 2009) ("If the … Directors did not know or have reason to know the allegedly

21  missing facts, however, then logically the directors could not disclose them.").

22      Even if Plaintiff had some good-faith basis to allege that Oncothyreon was aware of

23  the START trial results before the Company's 2010 10-K and 2011 10-K were filed, that is

24  patently insufficient to establish that demand on Oncothyreon's Board would have been

25  futile.   As discussed above, the Directors face personal liability exposure only if they

26  engaged in intentional misconduct with regard to Oncothyreon's public disclosures.

27  *Citigroup*, 964 A.2d at 132.   Plaintiff must therefore plead particularized facts that the

28

ONCOTHYREON'S MOTION TO DISMISS – 17
Case No. 2:13-cv-00769-JCC

1  Directors not only had advance knowledge of the START trial results, but also that the

2  Directors intentionally ensured that the Company did not properly disclose that information.

3  The Amended Complaint is devoid of any such factual allegations.

4      Plaintiff next contends that Oncothyreon's 2010 10-K and 2011 10-K were false and

5  misleading because those filings contained accounting errors, which later resulted in a

6  restatement of the Company's 2010 diluted earnings per share, as well as statements

7  regarding the Company's internal controls, which the restatement purportedly revealed to be

8  inaccurate.  AC ¶ 56d.  Again, however, Plaintiff offers no particularized factual nexus

9  between those alleged errors and the Oncothyreon Directors.  *See, e.g.*, *Citigroup*, 964 A.2d

10  at 134 (finding no substantial likelihood of liability for disclosure violations where the

11  complaint failed to "allege facts suggesting that the director defendants prepared the

12  financial statements or that they were directly responsible for the misstatements or

13  omissions [but] merely allege[d] that … the director defendants reviewed the financial

14  statements pursuant to their responsibilities").  Moreover, the Amended Complaint certainly

15  does not suggest, let alone support with particularized factual allegations, that any Director

16  was aware of accounting errors and intentionally caused the Company to make false or

17  misleading disclosures.  *See Guttman v. Huang*, 823 A.2d 492, 498 (Del. Ch. 2003)

18  (refusing to excuse demand where, *inter alia*, "[t]he complaint was entirely devoid of

19  particularized allegations of fact demonstrating that the outside directors had actual or

20  constructive notice of the accounting improprieties").

21      Without facts indicating any such bad faith or intentional wrongdoing, Plaintiff has not

22  established that any of the Oncothyreon Directors face a substantial likelihood of liability

23  and are therefore "interested" for demand futility purposes.  *See Coinstar*, 2011 WL

24  5553778 at *3 ("Since there is no allegation that Defendant *directors* knew of the officers'

25  statements and/or consciously permitted the false statements to persist in the market, the

26  Defendant directors are not personally liable for the officers' misstatements.").

27

28

ONCOTHYREON'S MOTION TO DISMISS – 18
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

1

### b.    *"Lack of Oversight"*

2   Plaintiff also alleges that, by virtue of being bound by the Company's Code of Conduct,

3   the Oncothyreon Directors were required to use reasonable efforts to ensure the accuracy of

4   all of the Company's public disclosures.  AC ¶ 56a.  According to the Amended Complaint,

5   "[e]ach member of the Board permitted individuals at all levels of the Company to issue

6   materially false and misleading statements about the Company's core product."  *Id.*  This is

7   a classic "lack of oversight" claim, which has been recognized as "possibly ***the most***

8   ***difficult theory in corporation law*** upon which a plaintiff might hope to win a judgment."

9   *Desimone v. Barrows*, 924 A.2d 908, 939 (Del. Ch. 2007) (quoting *In re Caremark Int'l,*

10   *Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)) (emphasis added).

11   To establish a substantial likelihood of director liability for general lack of oversight,

12   "a plaintiff must plead the existence of facts suggesting that the ***board knew*** that internal

13   controls were inadequate, that the inadequacies could leave room for illegal or materially

14   harmful behavior, and that the board ***chose to do nothing*** about the control deficiencies that

15   ***it knew existed***."  *Id.* at 940 (emphasis added).  This "scienter-based standard … ensure[s]

16   that the protections that exculpatory charter provisions afford to independent directors

17   against damage claims [will] not be eroded."  *Id.* at 935 (citing *Stone*, 911 A.2d at 369-70).

18   There is not a single fact in the Amended Complaint to suggest that any Oncothyreon

19   Director knew about disclosure or internal control deficiencies at the Company and

20   consciously ignored those deficiencies.  Plaintiff's new strategy of tacking the Directors'

21   oversight responsibilities to the Company's Code of Conduct — as opposed to the general

22   governance duties of any corporate board — changes nothing.  The exculpatory provisions

23   in Oncothyreon's Certificate of Incorporation require a showing of bad faith or intentional

24   wrongdoing before any Director may face personal liability.  And there is literally nothing

25   in the Amended Complaint to support such a finding.  *See Coinstar*, 2011 WL 5553778

26   at *4 ("In derivative actions like this, courts have repeatedly held that a plaintiff must allege

27

28

ONCOTHYREON'S MOTION TO DISMISS – 19
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON 98101
telephone (206) 389-4510
facsimile (206) 389-4511

1    more than that directors should have known or must have know [sic] about matters relating

2    to the corporation's 'core business.'") (internal quotation marks omitted).

3                    **c.      *Audit Committee Service***

4         Finally, Plaintiff contends that Directors Spiegelman, Stoughton, and Williams are

5    "interested" solely as a result of their service on the Company's Audit Committee.  *See* AC

6    ¶ 56b.  That theory is unavailing.  "[G]eneral allegations, based simply on a defendant's

7    membership on a board or committee, without more, do not trigger liability as a matter of

8    law."  *Coinstar*, 2011 WL 5553778 at *4 (citing *Pirelli Armstrong Tire Corp. Retiree Med.*

9    *Benefits Trust v. Lundgren*, 579 F. Supp. 2d 520, 532 (S.D.N.Y. 2008)); *see also Rattner v.*

10   *Bidzos*, No. 19700, 2003 WL 22284323, *13 (Del. Ch. Sept. 30, 2003) (finding no

11   substantial likelihood of liability for audit committee members for disclosure violations

12   where the court was "unable, from the face of the Amended Complaint, to determine what

13   role, if any, the Board or its members played in the internal processes of collecting and

14   disseminating financial information.  The most [the court] can safely admit knowledge of is

15   that … the Company had an Audit Committee.").  Plaintiff fails to plead with particularity

16   the requisite facts that the Audit Committee members "possess[ed] knowledge of facts

17   suggesting potential accounting improprieties … and took no action to respond to them."

18   *Guttman*, 823 A.2d at 507 n.36 (quoting *Ash v. McCall*, No. CIV.A. 17132, 2000 WL

19   1370341, *15 (Del. Ch. Sept. 15, 2000)).  Plaintiff also fails to allege any particularized

20   facts suggesting that the Audit Committee members "chose to do nothing about the control

21   deficiencies that [they] knew existed." *Desimone*, 924 A.2d at 940.

22        Regardless of how Plaintiff characterizes his disclosure allegations, he cannot escape

23   the requirements of Delaware's strict demand futility standards.  He must not only meet the

24   heightened pleading requirements of Rule 23.1, but must also address the exculpatory

25   provisions that protect Oncothyreon's Directors from liability in the good-faith exercise of

26   their duties.  Taken together, those standards require Plaintiff to essentially plead fraud by

27   the Company's Directors.  Without that, Plaintiff cannot establish *any* likelihood, let alone

28

ONCOTHYREON'S MOTION TO DISMISS – 20
Case No. 2:13-cv-00769-JCC

1    the substantial likelihood that is required in Delaware, of the Oncothyreon Directors being

2    personally liable on Plaintiff's putative derivative claims.  Oncothyreon respectfully submits

3    that there can be no genuine dispute that the Amended Complaint does not adequately allege

4    fraud.   As such, Plaintiff has not carried his burden of showing that demand on the

5    Oncothyreon Board would have been futile.

6    **IV.  <u>CONCLUSION</u>**

7       It should be the very rare and egregious case indeed where a single shareholder is

8    permitted to usurp the role of a duly elected board of directors and unilaterally force a

9    corporation into litigation against its own management.    This is not that case.

10   Oncothyreon's Board of Directors comprises six extremely accomplished and seasoned

11   professionals.  As a matter of Delaware law, those Directors are presumed to be capable of

12   exercising their independent business judgment, in good faith and in the best interests of the

13   Company and all of it shareholders.  Plaintiff seeks to undermine that presumption, and to

14   subvert some of the most fundamental principles of corporate governance, based on the

15   mere fact that Oncothyreon disclosed some disappointing news. But Plaintiff offers *no* facts

16   suggesting that *any* Oncothyreon Director engaged in *any* wrongdoing, let alone the sort of

17   "egregious" intentional misconduct or bad faith that is required to establish demand futility

18   under Delaware law.

19   /////

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28

ONCOTHYREON'S MOTION TO DISMISS – 21
Case No. 2:13-cv-00769-JCC

1    For the reasons set forth above, as a matter of law Plaintiff lacks standing to pursue

2    claims on behalf of Oncothyreon, and this case must be dismissed with prejudice.

3

4    RESPECTFULLY SUBMITTED this 18th day of July, 2013.

5                                    **FENWICK & WEST LLP**

6

7                            By:   _s/  Brian D. Buckley_
                                   BRIAN D. BUCKLEY, WSBA No. 26423
8                                  BRADLEY T. MEISSNER, WSBA No. 39592
                                   JEFFREY A. WARE, WSBA No. 43779
9
                                   1191 Second Avenue, 10th Floor
10                                 Seattle, WA 98101
                                   Phone:   206-389-4521
11                                 Fax:     206-389-4511
                                   Email:   bbuckley@fenwick.com
12                                          bmeissner@fenwick.com
                                            jware@fenwick.com
13
                             Attorneys for Nominal Defendant Oncothyreon Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ONCOTHYREON'S MOTION TO DISMISS – 22
Case No. 2:13-cv-00769-JCC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on the 18th day of July, 2013, I caused the foregoing document to be filed with the Court, and have caused a copy to be served on:

| | |
|---|---|
| Duncan C. Turner<br>Badgley Mullins Turner PLLC<br>4750 Columbia Center<br>701 Fifth Avenue<br>Seattle, Washington, 98104<br>Telephone: (206) 621-6566<br>Facsimile: (206) 621-9686<br>Email: duncanturner@badgleymullins.com<br>**Attorneys for Plaintiffs** | ☒ By E-Service<br>☐ United States Mail, First Class<br>☐ By Messenger<br>☐ By Facsimile<br>☐ By Overnight Courier<br>☐ By Email |
| ***Courtesy Copies to:***<br>Robert B. Weiser, ***pending pro hac vice***<br>Brett D. Stecker, ***pending pro hac vice***<br>Jeffrey J. Ciarlanto, ***pending pro hac vice***<br>The Weiser Law Firm, P.C.<br>22 Cassatt Avenue, First Floor<br>Berwyn, PA 19312<br>Telephone: (610) 225-2677<br>Facsimile: (610) 408-8062<br>Email:  rw@weiserlawfirm.com<br>         bds@weiserlawfirm.com<br>         jjc@weiserlawfirm.com<br><br>Kathleen A. Herkenhoff, ***pending pro hac vice***<br>The Weiser Law Firm, P.C.<br>12707 High Bluff Drive, Suite 200<br>San Diego, CA 92130<br>Phone: (858) 794-1441<br>Facsimile: (858) 794-1450<br>Email:  kah@weiserlawfirm.com<br>**Attorneys for Plaintiffs** | ☐ By E-Service<br>☐ United States Mail, First Class<br>☐ By Messenger<br>☐ By Facsimile<br>☐ By Overnight Courier<br>☒ By Email |

**FENWICK & WEST LLP**

By: _s/ Brian D. Buckley_

Brian D. Buckley, WSBA No. 26423

1191 Second Avenue, 10th Floor
Seattle, WA 98101
Phone: 206-389-4521
Fax: 206-389-4511
Email:  bbuckley@fenwick.com

ONCOTHYREON'S MOTION TO DISMISS – 23
Case No. 2:13-cv-00769-JCC

FENWICK & WEST LLP
1191 SECOND AVENUE, 10TH FLOOR
SEATTLE, WASHINGTON  98101
telephone (206) 389-4510
facsimile (206) 389-4511